IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENEE M. STANCATO, | ) | CASE NO. 5:13 CV 1519 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Renee M. Stancato under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 14.

[5] ECF # 6.

[6] ECF # 17.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] Stancato filed a motion to continue[10] the telephonic oral argument scheduled for July 9, 2014,[11] which motion was granted.[12] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Stancato, who was 52 years old at the time of the decision,[13] lives alone without a current driver's license,[14] and was previously married.[15] She has worked as a Licensed Practical Nurse at various nursing homes in the past, but her last job, as a service technician making customer appointments, was in 2006 and lasted five months.[16] Since 2008, her only income has been food stamps and other state financial assistance.[17]

---

[7] ECF # 18 (Stancato's brief); ECF # 19 (Commissioner's brief); ECF # 21 (Stancato's reply brief).

[8] ECF # 18-2 (Stancato's charts); ECF # 20 (Commissioner's charts).

[9] ECF # 18-1 (Stancato's fact sheet).

[10] ECF # 23.

[11] ECF # 22.

[12] ECF # 24.

[13] Transcript ("Tr.") at 19, 20.

[14] *Id.* at 16.

[15] *Id.*

[16] *Id.* at 18.

[17] *Id.*

The ALJ, whose decision became the final decision of the Commissioner, found that Stancato had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, depression, psychotic disorder, and schizoaffective disorder.[18]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Stancato's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs, ropes, ladders, and scaffolds. She can frequently stoop and crouch. She can frequently perform overhead reaching. She can understand, remember, and carry out simple job instructions. She can maintain attention and concentration to perform simple, routine and repetitive tasks. She can have frequent contact with coworkers, supervisors, and the general public. She can work in an environment with frequent changes to the work setting.[19]

As noted, Stancato has no past relevant work.[20]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Stancato could perform.[21] The ALJ, therefore, found Stancato not under a disability.[22]

---

[18] *Id.* at 15.

[19] *Id.* at 16.

[20] *Id.* at 19.

[21] *Id.* at 19-20.

[22] *Id.* at 20.

**C.     Issues on judicial review and decision**

Stancato asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Stancato presents the following issues for judicial review:

- The ALJ erred by not giving controlling weight to Stancato's treating psychologist, instead substituting his own judgment for that of a psychologist in medical matters beyond the ALJ's expertise.[23]

- The ALJ erred in finding that Stancato was able to perform light work, despite the testimony of the VE in response to the limitations set forth in the second and third hypothetical questions. He failed to meet his burden at Step Five of the Sequential Evaluation.[24]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded for further proceedings consistent with this opinion.

## Analysis

**A.     Standards of review**

***1.     Substantial evidence***

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact,

---

[23] ECF # 18 at 11.

[24] *Id.* at 15.

> if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable

---

[28] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). [Plaintiff's last name only] filed only an application for supplemental security income benefits.

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[34] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37] The court noted that the regulation expressly contains a "good reasons" requirement.[38] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

---

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[39] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[42] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[44] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[45] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[45] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[46] *Blakley v. Commissioner of Social Security*,[47] and *Hensley v. Astrue*.[48]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[49] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[50] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[51] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[52]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[53] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[46] *Rogers*, 486 F.3d at 242.

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d at 242.

[53] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[54] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[55] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[56] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[57]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[58]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[59] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Rogers*, 486 F.3d 234 at 242.

giving those opinions controlling weight.[60] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[61] or that objective medical evidence does not support that opinion.[62]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[60] *Blakley*, 581 F.3d at 406-07.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[63] *Blakley*, 581 F.3d at 407.

[64] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[65]

- the rejection or discounting of the weight of a treating source without assigning weight,[66]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[67]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[68]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[69] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[70]

The Sixth Circuit in *Blakley*[71] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[65] *Blakley*, 581 F.3d at 407-08.

[66] *Id.* at 408.

[67] *Id.*

[68] *Id.* at 409.

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend*, 375 F. App'x at 551-52.

[71] *Blakley*, 581 F.3d 399.

support the ultimate finding.[72] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[73]

In *Cole v. Astrue*,[74] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[75]

## B.    Application of standards

Essentially, this case turns on whether the ALJ properly dealt with the functional limitation opinions of Stancato's treating psychologist, Daniel Langer, Ph.D. Because I will conclude that the treatment of these opinions does not provide good reasons for discounting them, it will not be necessary here to address the issue involving the hypothetical posed to the VE, since that question was based on the RFC that was arrived at without proper consideration of Dr. Langer's opinions.

---

[72] *Id.* at 409-10.

[73] *Id.* at 410.

[74] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[75] *Id.* at 940.

In particular, the ALJ here attempts to deal with both of Dr. Langer's opinions by initially making no reference at all to his status as a treating source, or by noting the standards of review applicable to such sources. Instead, near the end of a paragraph ostensibly dealing with Stancato's credibility as to the intensity, persistence, and pace of her symptoms, the ALJ references in the opinion only one of Dr. Langer's medical source assessments[76] and then determines that the opinions of Dr. Langer "are not given significant weight as these conclusionary [sic] forms are not supported by or accompanied by any objective evidence."[77] The ALJ states that "the forms provide no specific limitations on claimant's ability to perform work activity."[78]

The Commissioner initially argues that the ALJ's handling of Dr. Langer's opinions was sufficient because these opinions were "nothing more than checked responses to a series of preprinted criteria representing a variety of functional limitations."[79]

As such, I observe first that by noting that Dr. Langer was opining as to Stancato's "functional limitations," the Commissioner implicitly undercuts the ALJ's finding that Dr. Langer's opinions did not deserve significant weight because they "provide no specific

---

[76] Although the ALJ only explicitly notes the opinion of August 18, 2011, the ALJ then cites to the transcript exhibits of each of the two opinions. Tr. at 17 (citing exhibits B14F, B15F). Further, all subsequent references to the Dr. Langer's opinions are in the plural – *i.e.*, "opinions" and "forms."

[77] Tr. at 17.

[78] *Id.*

[79] ECF # 19 at 12.

limitations on the claimant's ability to perform work activity."[80] Plainly, as the Commissioner specifically concedes, the opinions at issue address multiple work-related functions in the context of how the subject would be expected to perform that function in the context of a workday or workweek.[81] The ALJ's comment in this regard is simply at clear variance with the facts.

Further, the Commissioner's attempt to denigrate these opinions by insinuating that the check-box form is somehow so lacking in seriousness that it is somehow obviously not worthy of any weight is both disingenuous and unfounded.

First, as Stancato correctly notes, the check-box form is routinely used by state agency reviewers, such as here, by state agency psychologist John Waddell, Ph.D.,[82] who gave two opinions as to Stancato's mental residual functional capacity and did so largely by checking a box on a preprinted form. Moreover, the Ninth Circuit recently cited, as one of the ALJ's "egregious and important errors" in evaluating the opinion of a treating source, the fact that the ALJ "failed to recognize that the opinions expressed in check-box form [by the treating source] were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."[83] As such, *Garrison v. Colvin* recognizes that the issue is

---

[80] Tr. at 17.

[81] *Id.* at 412-13, 415-16.

[82] *Id.* at 283-84, 296-309.

[83] *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

not whether the treating source expresses an opinion in narrative or check-box form, but whether that opinion is – as the regulations plainly state – otherwise "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[84] Further, as the Sixth Circuit has long-held, and as was noted above, the treating source opinion need not contain within itself all the supporting evidence underpinning that opinion in order to be entitled to controlling weight.[85]

Here, as with the claimant in *Garrison*, the ALJ did not begin by taking note of the treating relationship between Stancato and Dr. Langer. At a minimum, Dr. Langer's views were based on a treating relationship that covered many months in 2011 and 2012, and which length is a foundation for the presumption of weight accorded to treating sources. Further, as Stancato also points out, both opinion forms also summarize the supporting evidence behind the opinions, such as her "moderate to severe depression with fatigue," her "social isolation," and her "experiences [of] daily auditory hallucinations," that were severe enough for her to burn herself with cigarettes in an attempt to distract herself from the voices.[86] Finally, as Stancato also notes, the opinions are supported by additional treatment notes of

---

[84] 20 C.F.R. § 416.927(c)(2).

[85] *Garner*, 745 F.2d at 391.

[86] *See*, Tr. at 413, 416.

Dr. Langer in the months following these opinions which consistently show that Stancato's hallucinations persisted, as did her depression and anxiety.[87]

In short, as noted above, the ALJ here substantially missed the mark of even passable compliance with the treating physician rule and good reasons requirement set out in the regulations and in the case law. No conceivable holistic reading of this opinion can result in finding good reasons, well-articulated in the record and accessible to meaningful judicial review, that provide substantial evidence for the decisions not to accord Dr. Langer's opinions controlling weight and to then afford them less than significant weight.[88]

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Stancato had no disability. Therefore, the denial of Stancato's application is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 24, 2014
s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[87] ECF # 18 at 12 (citing transcript).

[88] I note also that attempting such a holistic reading here was made more difficult by the composition of the opinion itself, which contains a paragraph that extends from the bottom third of page 17, through the entirety of page 18, and only ends after consuming the top quarter of page 19. While there is no legal requirement that an opinion be concise or even well-written, a single paragraph that metastasized to over 70 lines of single-space type and over 1,000 words does not advance *Wilson*'s view that a claimant is entitled to a clear statement of reasons why the opinion of his treating doctor was not accorded controlling weight and his claim denied. *See*, *Wilson*, 378 F.3d at 546.